471 P.2d 143

Elaine Siddoway RICHARDS, Plaintiff
and Appellant,

v.

Henry Ralph SIDDOWAY, Mary Siddeway
and Ben Morrison, Defendants
and Respondents.

No. 11800.

Supreme Court of Utah.

June 11, 1970.

William G. Gibbs, of Clyde, Mecham & Pratt, Salt Lake City, for appellant.

Hugh W. Colton, of Colton & Hammond, Vernal, for respondents.

ELLETT, Justice.

This is an action to determine ownership of 20 acres of land. The plaintiff, appellant, hereafter referred to as Elaine, claims title by reason of a judgment rendered March 3, 1959, which awarded her the fee after a life estate in her father, now deceased. That decree resulted from a stipulation signed by seven of the eight children[1] of one William H. Siddoway, deceased, not all of whom were involved in a lawsuit for the partition of the land of inheritance. That suit was numbered 3652 and hereafter will be referred to by that number.

The stipulation provided that the four male children would take the range land as

tenants in common, three of them to receive the fee, the fourth—father of Elaine —would take a life estate with remainder over to Elaine, who was his only child.

There was an 80-acre tract of land known as the McCarrell place, which according to the stipulation was to be decreed "as the interests may appear in the male heirs."[2] There was a considerable amount of other property involved in the stipulation. The decree of the court gave to Elaine's father only a life estate in all of the realty with remainder over in fee to Elaine.

The decree was filed in the office of the county recorder on May 27, 1959, and thereafter all the world was put on notice that the father had only a life estate in the land.[3] Subsequently, on September 1, 1959, the decree was amended to correct a description in the 20 acres apportioned to Elaine's father.

On January 8, 1961, Elaine's father and her stepmother gave the land in question to Ben Morrison for a debt owing to him, and on January 19, 1962, her father died. This action was commenced September 16, 1963. A default judgment was granted and then set aside, and finally an amended answer was filed on December 31, 1968, wherein the defendants claimed that the judgment in case No. 3652 contained a

---

1. No point is made on this appeal of the fact that one child did not sign the stipulation.

2. It is the one-fourth share of this land which is involved in this present action.
3. Section 57-3-2, U.C.A.1953.

*clerical* error in that the decree should have given the fee to Elaine's father. At the same time, a motion in this matter was made to correct the so-called *clerical* error in the other case.

The trial court herein granted the motion to amend the judgment in case No. 3652 under the assumption that he was correcting a *clerical* error, and by doing so he deprived Elaine of the fee to the 20 acres of land involved in this case, and the only issue before us on this appeal is one of law, to wit: Is the order purporting to reform the judgment in case 3652 valid?

Rule 60(b), U.R.C.P., provides as follows:

On motion and upon such terms as are just, the court may in the furtherance of justice relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) * * * (3) * * * (4) * * * (5) * * * (6) * * * (7) * * * The motion shall be made within a reasonable time and for reasons (1), (2), (3), or (4), not more than 3 months after the judgment, order, or proceeding was entered or taken. * * * This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order or proceeding or to set aside a judgment for fraud upon the court. The procedure for obtaining any relief from a judgment shall be by motion as prescribed in these rules or by an independent action.

This rule was based upon Section 104–14–4, U.C.A.1943, reading:

The court may, * * * upon such terms as may be just, relieve a party or his legal representative from a judgment, order or other proceeding taken against him through his mistake, inadvertence, surprise or excusable neglect; and when, for any reason satisfactory to the court or the judge thereof, the party aggrieved has failed to apply for a new trial or other relief sought during the term at which such judgment, order or proceeding complained of was taken, the court, or judge thereof in vacation, may grant the relief upon application made within a reasonable time, not exceeding ninety days after the making or occurrence of the judgment, order or other proceeding sought to be relieved from. * * *

Prior to 1939 the reasonable time was stated to be not exceeding six months. Since 1939 under both the statute and the Rules of Civil Procedure, one wishing to amend a judgment valid upon its face must move to do so within three months except for correction of *clerical* errors. The general rule is found in 49 C.J.S. Judgments § 238:

After expiration of the term at which it was rendered, or of the statutory period of limitation, in cases governed by

statute, a judgment is no longer open to any amendment, revision, modification, or correction which involves the exercise of the judgment or discretion of the court on the merits or on matters of substance. The only amendment then permissible is one which is intended to make the judgment speak the truth by showing what the judicial action really was, and not one which corrects judicial errors or remedies the effects of judicial nonaction; the court has no power at such time to revise and amend a judgment by correcting judicial errors, and making it express something which the court did not pronounce, and did not intend to pronounce, in the first instance. Judicial errors in judgments are to be corrected by appeal or writ of error, or by certiorari, or by awarding a new trial, or by any means specially provided by statute, and not by amendment, unless the statute permits such amendment.

■ The distinction between a judicial error and a clerical error does not depend upon who made it. Rather, it depends on whether it was made in rendering the judgment or in recording the judgment as rendered. 46 Am.Jur.2d Judgments § 202.

■ In case No. 3652 the court may have erred in giving Elaine the remainder of the land in question, but there was no clerical error involved. It resulted from the failure of the judge to follow the written agreement signed by seven of the eight heirs of William H. Siddoway but not by Elaine, although she was a party to the partition suit wherein the judgment was rendered. Only Elaine and her father knew whether the decree entered by the court was according to their wishes and intentions. Neither of them ever appealed, and the judgment became final some nine years before an answer was filed in the instant matter. The record does not show that the judgment did not follow the findings of fact. Such an error must be corrected by a timely motion for a new trial, by timely appealing the matter, or by an independent action wherein all of the parties to the original proceeding are made parties to a new suit in equity.

The question posed on this appeal has been answered several times by this court. In the early case of Elliott v. Bastian, 11 Utah 452, 40 P. 713 (1895), a judgment of no cause of action was taken against a deceased plaintiff. Since the death of the party did not appear of record, this court held that the judgment was not void. Substituted plaintiffs moved to set aside and vacate the judgment after the six months' period had run. The trial court denied the motion, and in affirming the ruling this court said:

* * * And it is clear that the reasonable time mentioned is the six-months limit prescribed by the statute. "The time within which such an order could

be vacated must be held to be limited by section 473. * * * The court had no jurisdiction after the expiration of six months to vacate the order made on a mere motion for that purpose, the order not being void on its face." Moore v. Superior Court, 86 Cal. [495] 496, 25 P. 22. We are of the opinion that the lower court has no authority to vacate the judgment rendered in this case upon the application made. * * *

Another case in point is Benson v. Anderson, 14 Utah 334, 47 P. 142 (1896). Here a judgment was entered December 15, 1894. More than six months later (July 8, 1895) the defendants moved to amend the judgment by striking therefrom the provision that costs be rendered against them. The court on December 9, 1895, granted the motion. On January 21, 1896, the plaintiff filed a motion to vacate the order of December 9, 1895. This motion was granted, and the order purporting to amend the judgment was set aside. The defendants appealed from the last order. In affirming the ruling striking the amendment, this court said:

The term of the court at which the final decree adjudging the costs against the defendants was made had expired months before the motion to strike out was made. In fact, another term intervened. It was not a void decree,—merely a decree in form,—nor was it a decree *pro confesso,* or by default. Therefore the defendant should have entered his motion during the term at which the decree was made, or, if he desired a rehearing or new trial, he should have given notice and filed his motion for a new trial within such time as the statute allowed. That time having passed, the decree could be opened only by bill of review, or by an original complaint for fraud. "But neither a final judgment nor a final decree, pronounced upon a hearing on the merits, can be set aside after the term, upon motion, for any error into which the court may have fallen. The law does not permit any judicial tribunal to exercise any revisory power over its own adjudications after they have, in contemplation of the law, passed out of the breast of the judge." 1 Freem.Judgm. § 101. * * *

In the case of Lees v. Freeman, 19 Utah 481, 57 P. 411 (1899), the clerk had made a minute entry on July 12, 1897, stating that in the case of John Lees, plaintiff, v. J. J. Freeman, defendant, the court renders its judgment and finds for the plaintiff and against the defendant in teh sum of $456.-71 and costs of suit or a return of the sheep in question and that findings and decree in accordance therewith be signed and filed. Thereafter, on August 5, 1897, findings of fact and conclusions of law were filed and entered awarding judgment against the defendants J. J. Freeman and I. E. Freeman for the sum of $485.59, inter-

ests and costs. On February 18, 1898, I. E. Freeman filed his verified petition in the same case to modify and correct the judgment on the ground that the court had found the judgment against J. J. Freeman only. On September 12, 1898, the court made the following order:

That the actual findings of this court after the trial, and as announced from the bench, were in favor of the defendant, I. E. Freeman, no cause of action. That the court inadvertently, and without the knowledge or consent of the defendant petitioner, and against the well-known and avowed findings of the court, signed findings and decree whereby judgment was erroneously and unjustly rendered against I. E. Freemen, * * *.

As a conclusion of law the court concluded that the decree signed on the 12th of July, 1897, and filed August 5, 1897, should be modified so that the same would show no cause of action against I. E. Freeman and that the judgment against J. J. Freeman should stand. The plaintiff appealed from this order. In reversing the trial court, this court at pages 485 and 486 of the Utah Reports, at page 411 of 57 P. said:

The record presents a strong argument in favor of the equitable action of the court; but our statute does not give jurisdiction, under the circumstances shown. In a case such as presented here, a bill in equity is the proper remedy by which all the parties may be brought before the court, and where issues may be regularly joined and tried on all the facts connected with the transaction. * * *

The judgment and findings as originally entered should stand unless corrected by proper proceedings commenced for that purpose.

The concurring opinion of Mr. Justice Frick in J. P. Fowler Mfg. Co. v. City Court of Salt Lake City, 54 Utah 541, 544, 182 P. 205 (1919), states the law:

* * * Under the statute in question here, the application to obtain relief from a default judgment must be made in the original action and upon the grounds stated in the statute. The right to thus proceed must of necessity be made in accordance with the statutory provisions as pointed out by Mr. Justice Gideon. That, however, does not preclude the respondent from instituting an independent action in equity to enjoin the enforcement of the judgment or to obtain relief if the facts and circumstances justify such an action as pointed out in the case of McMillan v. Forsythe, 47 Utah, 571, 154 Pac. 959.

In Frost et al. v. District Court et al., 96 Utah 106, 83 P.2d 737 (1938), the trail court undertook to modify a judgment some four years after it was entered. It was contended that the amendment was

merely a clerical error. In the original decree Frost was given rights to a water flow with a priority of 1891 and subject to a priority date of 1876 in favor of Allen S. Tanner. The amendment eliminated the reference to the priority dates. The court held the change to be one of substance and said:

> Where there has been no retention of jurisdiction by the trial court, unaided by statute, it has no power after the expiration of the term and certainly after the time for appealing has expried, to change or modify its judgment in a substantial or material respect. This is well settled law.

The point was again raised in the matter of In re Goddard's Estate, 73 Utah 298, 273 P. 961 (1929). There a trial was had before a judge pro tempore and judgment entered October 29, 1926. The term of court terminated November 22, 1926. On October 15, 1927, a petition was filed alleging that the proceedings before the judge pro tempore were invalid for reasons therein stated. The trial judge on February 28, 1928, made and entered an order vacating and setting aside all proceedings had before the judge pro tempore, and an appeal was taken from that order. In annulling the order this court had this to say:

> By numerous decisions of this court it is settled that a judgment, not void on its face, cannot in the same proceeding by motion, be opened or vacated by the court which rendered it, except within six months after the adjournment of the term at which the judgment was rendered. [Citations omitted.] * * *.

\* \* \* \* \* \*

The rule applicable is wholesome and necessary. There must be an end to the time when judgment can be questioned.

In this case the protestant had a remedy by motion for new trial and also by appeal, but she permitted the time limited by law therefor to lapse without seeking either. Nearly a year after the adjournment of the term at which the proceedings were had, she, by a motion, attempted to avoid the judgment upon extrinsic grounds. It is a case plainly within the rule which denies jurisdiction of a court to open or vacate its judgments under such circumstances.

The respondent in the instant case did not file a suit in equity whereby all parties to case No. 3652 could be brought before the court. He did not even attempt to amend the judgment by filing a motion in that case. Instead, like the cowbird, which lays its eggs in the nests of other birds to be hatched and reared without labor unto itself, he planted his motion to amend the judgment of case 3652 in this matter and prevailed upon the judge to sign an order herein purporting to amend it some ten years after it was entered.

This order is a nullity, and the judgment of 1959 is still in force and effect, and as such it is res judicata as to the matters involved on this appeal. The judgment of the trial court is reversed with directions to enter judgment in favor of the appellant awarding her the title to the land in question, together with her costs.

CROCKETT, C. J., CALLISTER and HENRIOD, JJ., and ALDON J. ANDERSON, District Judge, concur.

TUCKETT, J., having disqualified himself, does not participate herein.