2011 UT App 185

STATE of Utah, Plaintiff and Appellee,

v.

Leonard STEWART, Defendant and Appellant.

No. 20090572–CA.

Court of Appeals of Utah.

June 9, 2011.

Michael S. Brown and Margaret P. Lindsay, Provo, for Appellant.

---

Mark L. Shurtleff and Marian Decker, Salt Lake City, for Appellee.

Before Judges DAVIS, McHUGH, and ROTH.

## OPINION

McHUGH, Associate Presiding Judge:

¶ 1 Leonard Stewart appeals from his conviction for retail theft with prior convictions, a third degree felony. *See* Utah Code Ann. §§ 76–6–412, –602 (2008).[1] Stewart appeals the enhancement of his retail theft conviction on the ground that the State did not adequately prove two prior convictions. We affirm.

## BACKGROUND

¶ 2 On October 5, 2008, Stewart was caught stealing a wallet and a belt buckle from a Shopko store in Spanish Fork. Although this theft would normally be classified as a class B misdemeanor, *see id.* § 76–6–412(1)(d) (classifying theft of property as a class B misdemeanor where the value of the stolen property is less than $300), because Stewart had previously been convicted of retail theft on at least two occasions, once in 1999 (the 1999 conviction) and once in 2003 (the 2003 conviction), he was charged with a third degree felony, *see id.* § 76–6–412(1)(b)(ii).

¶ 3 At a bench trial held on May 21, 2009,[2] the State presented evidence on both the underlying theft charge and of Stewart's prior convictions. With respect to the 1999 conviction, the State provided the trial court with a signed judgment and sentence from the Payson City Justice Court. For the 2003 conviction, however, no signed judgment was available. Instead, the State provided the trial court with a copy of the unsigned judgment, as well as the record from the previous case (the 2003 record). Although the parties have not provided us with the 2003 record, the record we do have indicates that it included documents relating to a guilty plea, Stewart's "continued participation[ ] ... with Adult Probation and Parole," and his "failure to comply with probation on the sentencing for theft." In response, Stewart argued that without a signed judgment, the 2003 record was insufficient to prove that he had been convicted in 2003.

¶ 4 The trial court first found Stewart guilty of the current charge of theft. Next, the trial court considered the issue of Stewart's prior convictions. Although the court concluded that the 2003 record provided "ample evidence" of the 2003 conviction, it granted the State's request that it be allowed "to supplement at the time of sentencing any additional information [the State] believe[d][it] want[ed] the Court to consider for the purpose of addressing the question on the prior conviction in the second matter." Stewart subsequently filed a motion to arrest judgment, arguing again that the 2003 conviction could not be proven without a signed judgment. The State opposed Stewart's motion and attached a copy of the 2003 judgment that had been signed nunc pro tunc by the original trial judge after the earlier proceedings. At the time set for sentencing, the trial court denied Stewart's motion to arrest judgment, concluding that even absent the subsequently-signed judgment, the 2003 record provided sufficient evidence of the 2003 conviction. The trial court then sentenced Stewart to zero to five years in prison. Stewart now appeals.

## ISSUES AND STANDARDS OF REVIEW

¶ 5 Stewart contends that the State presented insufficient evidence to prove that he had been convicted twice previously of theft, arguing that this court's decision in *State v. Anderson*, 797 P.2d 1114 (Utah Ct.App.1990), requires a signed judgment to prove a prior conviction. In response, the State asserts that *Anderson* is distinguishable and that a signed judgment was not necessary here. In

---

1. Utah Code section 76–6–412 has been amended since the commission of the crimes at issue in this case. *See* Utah Code Ann. § 76–6–412 (Supp.2010). Thus, we cite to the version of the statute in effect at the time the crimes were committed.

2. Stewart waived his right to a jury trial and the matter was tried to the court.

the alternative, the State contends that if a signed judgment was required, the State cured the deficiency by submitting the judgment signed nunc pro tunc by the judge who presided over the prior conviction.

¶ 6 "When reviewing a bench trial for sufficiency of the evidence, we must sustain the trial court's judgment unless it is against the clear weight of the evidence, or if [we] otherwise reach[ ] a definite and firm conviction that a mistake has been made." *American Fork City v. Rothe*, 2000 UT App 277, ¶ 4, 12 P.3d 108 (alterations in original) (internal quotation marks omitted). However, "[w]e consider the trial court's interpretation of binding case law as presenting a question of law and review the trial court's interpretation of that law for correctness." *State v. Richardson*, 843 P.2d 517, 518 (Utah Ct.App. 1992), *quoted in Stevensen v. Goodson*, 924 P.2d 339, 346 (Utah 1996). Furthermore, we "may affirm the judgment appealed from if it is sustainable on any legal ground or theory apparent in the record." *Madsen v. Washington Mut. Bank FSB*, 2008 UT 69, ¶ 26, 199 P.3d 898 (emphasis and internal quotation marks omitted).

## ANALYSIS

¶ 7 We agree with Stewart that *Anderson* requires the State to introduce a signed copy of the judgment of each prior conviction to prove the third degree felony for which Stewart was sentenced. In *Anderson,* this court stated,

> Absent any showing that a signed, written judgment against [the defendant] was entered, the evidence is inadequate to support the trial court's finding that [the defendant] had been twice convicted of theft. Thus, the finding to that effect is clearly erroneous.... *Our ruling thus requires that a judgment of prior conviction be written, clear and definite, and signed by the court (or the clerk in a jury case) in order to serve as the basis for enhancing a penalty* pursuant to Utah Code Ann. § 76–

6–412(1)(b)(ii) (1990) [retail theft with priors].

*Anderson,* 797 P.2d at 1117 (emphasis added). Here, the State did not initially provide a copy of the written, signed judgment evidencing Stewart's 2003 theft conviction.

¶ 8 Furthermore, we can see no appreciable difference between the evidence that was available to the trial court in *Anderson* and the 2003 record provided to the trial court here. In *Anderson,* the State introduced an unsigned Circuit Court Criminal Case Filing/Disposition Report (Disposition Report) that reflected a 1982 theft charge against the defendant, his change of plea to guilty, and that the case was disposed of by sentencing the defendant to payment of a fine and restitution. *See id.* at 1115. Notwithstanding the information provided in the report, the *Anderson* court held that it was insufficient to establish the defendant's prior conviction. *See id.* at 1117. In the present case, the State attempted to prove that Stewart was convicted of theft in 2003 by giving the trial court the file from the earlier case. The State admitted that the file did not contain a signed judgment, but called the court's attention to an unsigned document titled "Minutes Sentence, Judgment, Commitment" (Unsigned Judgment) that it considered probative of the prior conviction. Only the minute entry was entered into evidence. That document, like the unsigned Disposition Report in *Anderson,* indicates that the defendant pleaded guilty to retail theft and was sentenced by the court.

¶ 9 Thus, the record before us does not support a conclusion that the information provided to the trial court here was significantly different than that provided with respect to the 1982 prior conviction in *Anderson.* In both instances, the sentencing court had access to documents from the prior case that strongly suggested the defendant was convicted and sentenced for theft; yet, the sentencing court in neither case had a written, signed judgment of conviction available to it. We held in *Anderson* that this was not enough.[3]

---

**3.** Furthermore, we do not believe that Stewart should be held accountable for the absence of the entire 2003 file from the record on appeal. It was the State's burden to prove that Stewart

had, two or more times in the past, been convicted of theft. *See State v. Triptow,* 770 P.2d 146, 149 (Utah 1989). Yet, the State did not enter a copy of the entire 2003 file into evidence. Be-

¶ 10 For these reasons, the State's initial attempt to establish Stewart's 2003 conviction did not meet *Anderson's* requirement that "a judgment of prior conviction be written, clear and definite, and signed by the court (or the clerk in a jury case) in order to serve as the basis for enhancing a penalty." *State v. Anderson*, 797 P.2d 1114, 1117 (Utah Ct.App.1990). While Judge Davis is convinced that our interpretation of *Anderson* is too restrictive on the prosecution's use of other evidence of a prior conviction, we need not address that issue here, because the State provided the trial court with a written, signed judgment of conviction of the 2003 theft executed nunc pro tunc.

¶ 11 Stewart challenges the State's reliance on the nunc pro tunc order on the ground that it was offered too late. We disagree. After the trial court heard the evidence on the current charge, the State offered the evidence relevant to Stewart's prior convictions. At that time, the State explained that the file from the 2003 theft charge against Stewart did not include a signed judgment, offered the file to the trial court for review, and requested that the trial court "determine guilt [on the current offense] at this point, and wait until sentencing to determine the degree of the offense, whether it be a class B misdemeanor or third degree felony, and give the [S]tate an opportunity to present additional prior thefts, robbery, or burglary convictions." The trial court did just that, finding Stewart guilty of the current charges but leaving the record open so that the State could "supplement at the time of sentencing"

with any additional evidence relating to Stewart's prior conviction. Between the initial hearing and the time set for sentencing, the State obtained a signed judgment entered nunc pro tunc on the 2003 offense. Thus, the State did precisely what *Anderson* suggested to correct the deficiency in the 2003 record. *See id.* at 1117 n. 13 (noting that the lack of a signed order could be corrected, under appropriate circumstances, "by entry nunc pro tunc, with any required opportunity for the defendant to respond").

¶ 12 Furthermore, we disagree with Stewart that this case raises any constitutional concerns. The State asked the trial court to leave the record open so that it could present additional evidence before the court determined the degree of the offense. The trial court, without objection from Stewart, agreed to do so. The trial court then took additional evidence before finding Stewart guilty of felony theft and proceeded to sentencing only after doing so. We conclude that the trial court acted within its considerable discretion in leaving the record open for that purpose. *See State v. Jackson*, 2010 UT App 328, ¶ 23, 243 P.3d 902 (rejecting defendant's challenge to trial court's decision to reopen the case to allow the State to present evidence of the defendant's identity with respect to his prior conviction).

## CONCLUSION

¶ 13 The State corrected any deficiency with respect to the use of the Unsigned Judgment to prove the 2003 conviction by

fore giving the file to the trial court, the prosecutor stated, "Here is the court's file. I had it pulled hoping that I would see a signed copy [of the 2003 judgment of conviction], the same order, and it's not signed...." Thus, it appears that the State handed the trial court the original file of the 2003 proceedings and then returned the file to the clerk's office after the hearing. Although we ordinarily will presume the regularity of the proceedings in the trial court when a party fails to transcribe a relevant hearing, *see State v. Blubaugh*, 904 P.2d 688, 699 (Utah Ct. App.1995), or does not otherwise provide us with a way to review relevant record evidence, *see Sampson v. Richins*, 770 P.2d 998, 1006 (Utah Ct.App.1989) (holding that, in the absence of a complete record, the court would presume that the trial court's finding of causation was supported by the evidence), we are unwilling to do

so when the evidence in question was never made part of the record by the party who bears the burden on that issue, *cf. Traco Steel Erectors, Inc. v. Comtrol, Inc.*, 2009 UT 81, ¶ 25, 222 P.3d 1164 (noting that the appellant's "appeal can ... only be interpreted to be an appeal from the sufficiency of the admitted evidence"). The record on appeal includes all of the evidence admitted by the trial court. While the Utah Supreme Court recognizes a presumption of regularity that attaches to prior convictions, such a presumption arises upon the admission of "[a] previous judgment of conviction so proven." *Triptow*, 770 P.2d at 149; *see also State v. Ferguson*, 2007 UT 1, ¶ 34, 169 P.3d 423 ("[T]he State may satisfy its initial burden of establishing the validity of the [prior] conviction by producing a certified copy of the conviction.").

obtaining a judgment signed nunc pro tunc. The trial court did not exceed its discretion in leaving the record open so that the State could offer additional evidence on that point. Therefore, we affirm Stewart's conviction of third degree felony theft.

ROTH, Judge (concurring):

¶ 14 I concur in Judge McHugh's opinion. I write separately to address why I believe that it was not appropriate for the trial court to consider the case file offered by the State as the basis for its conclusion that there was a prior enhancing conviction.

¶ 15 I agree with Judge McHugh that *State v. Anderson*, 797 P.2d 1114 (Utah Ct. App.1990), is unequivocal in requiring an appropriately signed judgment to prove a prior conviction for purposes of enhancement. *See id.* at 1117 ("Our ruling thus requires that a judgment of prior conviction be written, clear and definite, and signed by the court (or the clerk in a jury case) in order to serve as the basis for enhancing a penalty...."). A significant concern underlying the court's holding was the historical practice, apparently then persisting in some of Utah's courts, "of rendering oral judgments in criminal cases." *See id.* at 1115. The court set out a number of reasons for putting an end to this practice and requiring written criminal judgments, one of which is particularly pertinent to this case: providing "clear evidence of the defendant's conviction in later proceedings."[1] *See id.* at 1116. *Anderson* recognized that the requirement of a written criminal judgment was not novel but was already addressed by rule 58A of the Utah Rules of Civil Procedure, made applicable to criminal cases by rule 81(e), "which serves generally to unify civil and criminal procedure in Utah." *Id.* at 1116–17. Rule 58A requires "that the court (or the clerk in the case of a verdict) sign and file a written judgment." *Id.* at 1116.

¶ 16 The issue before the court in the present case raises the broader question of how a prior criminal conviction is to be proved in a case where the fact of a prior conviction is at issue as an enhancement. The starting point for such an inquiry must be the *Anderson*/rule 58A requirement, which I read as establishing a signed judgment as the *sine qua non*. In other words, the existence of a written judgment, appropriately signed by the clerk or by a judge, must be established in order to meet the burden of proof of a prior conviction.

¶ 17 Thus, if it appears that a conviction occurred but a written judgment was never executed or entered, as in this case, the oversight must be remedied in order to prove the conviction for enhancement purposes. As suggested by *Anderson*, rule 60(a) of the Utah Rules of Civil Procedure may serve the purpose by permitting the creation after the fact of an original, signed judgment to remedy the original omission. *See* 797 P.2d at 1117 n. 13 ("Depending on the circumstances of a particular case, the lack of a signed judgment could perhaps have been corrected as a clerical error or by entry nunc pro tunc, with any required opportunity for the defendant to respond." (citing Utah R. Civ. P. 60(a) (additional citation omitted))); *see also* Utah R. Civ. P. 60(a) ("Clerical mistakes in judgments ... and errors therein arising from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any party...."). The ability of a trial court to correct such errors after the fact has long been acknowledged. *See, e.g., Frost v. District Court of First Judicial Dist.*, 96 Utah 106, 83 P.2d 737, 740 (1938) ("[T]he trial court had inherent power to correct clerical errors at any time and to make the judgment entry correspond to the judgment of the court."). Nevertheless, "[t]he correction contemplated by Rule 60(a) must be undertaken for the purpose of reflecting the actual intention of the court and parties." *Lindsay v. Atkin*, 680 P.2d 401, 402 (Utah 1984). In contrast, errors of substance, such as judicial errors, cannot be corrected under this rule but must be addressed by appeal or under other rules, *see id.*, such as, for example, rule 59 of the Utah Rules of Civil Procedure, which governs mo-

---

1. The other reasons include clearly fixing the date of judgment, ensuring that the judgment is both free of error and the actual decision of the responsible judge (or jury), and providing an initial basis for "meaningful review of the judgment." *See State v. Anderson*, 797 P.2d 1114, 1115–16 (Utah Ct.App.1990).

tions for new trial or to amend judgment, *see* Utah R. Civ. P. 59. " 'The distinction between a judicial error and a clerical error does not depend upon who made it' "; " '[r]ather, it depends on whether [the error] was made in rendering the judgment or in *recording* the judgment as rendered.' " *Lindsay*, 680 P.2d at 402 (quoting *Richards v. Siddoway*, 24 Utah 2d 314, 471 P.2d 143, 145 (1970)) (additional citation omitted). Thus, rule 60(a) seems to encompass the kind of error of omission that results in a failure to reduce to writing or sign a judgment that was actually rendered by a judge or jury. Such an omission should be correctable nunc pro tunc under this rule, as it was in this case.[2]

¶ 18 Once it is determined that a valid written, signed judgment of conviction was created in the prior case, whether at the time it was rendered or later, the most straightforward way to prove the conviction is to produce the original, which is the best evidence of its existence. *See* Utah R. Evid. 1002 ("To prove the content of a writing, . . . the original writing . . . is required, except as otherwise provided" by rule or statute.). Our rules of evidence provide a broad exception to the best evidence rule, however, in that "[a] duplicate is admissible to the same extent as an original," barring some question "as to the authenticity of the original" or some unfairness. *See id.* R. 1003. Indeed, rule 1005 of the Utah Rules of Evidence provides a specific method for securing the admission into evidence of copies of public records: "The contents of an official record . . . may be proved by copy, certified as correct in accordance with Rule 902,[3] or testified to be correct by a witness who has compared it with the original." *Id.* R. 1005. A judgment is clearly an "official record" subject to this rule. *See id.* In my experience, this is the way most prior judgments of conviction are offered into evidence.

¶ 19 In the case before us, however, the prior case file did not contain a signed final judgment of conviction. In such a circumstance, it must be determined whether a final written judgment was ever created and signed. If it is determined that a final judgment was not signed through oversight, then the oversight can be addressed through rule 60(a), as discussed above.[4] If a final judgment was signed but a copy is not available, rule 1005 provides a way to prove the conviction occurred: "If a copy which complies with [the specified requirements] . . . cannot be obtained by the exercise of reasonable diligence, then other evidence of the contents may be given." *Id.* R. 1005. Thus, assuming that a copy of the entire case file was the kind of "other evidence" that would be admissible for this purpose, in my view, the prosecution would first have to show that (1) a signed, written judgment of conviction had been executed and entered and (2) a copy of the final judgment was not reasonably ob-

2. It appears to me that rule 60(a) contemplates that such an oversight would necessarily be corrected in the case in which it occurred and not in a case, such as the one before us, where the fact of a conviction is of collateral interest. If there were a question of any substance, such a process could still involve examination of the prior case file to determine whether a conviction had occurred, but both the examination and the determination would be made by the judge assigned to the prior case "with any required opportunity for the defendant to respond." *See id.* at 1117 n. 13. Confining resolution of the question of whether a conviction had occurred to the case in which it was tried would have the salutary effect of avoiding the possibility of conflicting results were the issue to be separately resolvable in any other case where the fact of a prior conviction was at issue.

3. Rule 902, entitled "Self-authentication," provides that "[e]xtrinsic evidence of authenticity as a condition precedent to admissibility is not re-

quired with respect to" a number of categories of public and private documents, including "[c]ertified copies of public records," Utah R. Evid. 902(4) (emphasis omitted); *see also id.* R. 902(1), (2) (identifying other categories of public documents that may also be self-authenticated). For each such category, the rule describes the kind of document and the requirements for self-authentication applicable to each. *See id.* R. 902.

4. It is conceivable that in the case of a prior conviction, no signed judgment appears in the file and it is not reasonably possible to determine if one ever existed, due to, for example, the age of the conviction, the retirement of the original judge, or the loss or destruction of records, though there is evidence that a conviction did occur. Whether rule 60(a) could be used to produce a signed judgment in such a case or whether the admission of "other evidence" of the conviction would be appropriate is a question that I do not address here.

tainable, before such "other evidence" of the conviction could be considered by the court. I do not believe that the prosecution met that burden in this case because it failed to provide proof of the threshold fact, that is, that a written final judgment complying with rule 58A and *Anderson* had ever been signed. Rather, in the absence of such a document in the file or any proof that a written judgment had ever been executed, the State simply offered "other evidence" of the conviction.[5] Because the necessary prerequisite for the consideration of such evidence had not been established, I believe that the trial court could not consider it. However, the State ultimately corrected the problem by obtaining a nunc pro tunc final judgment, which it offered within the time frame the court allowed.

¶ 20 I agree that the prior conviction was adequately proven based on Judge McHugh's analysis. I therefore join in her opinion.

DAVIS, Presiding Judge (concurring in the result):

¶ 21 I disagree with both the majority's interpretation of *Anderson* and its holding permitting additional evidence to be taken after a finding of guilt has been made. For this reason, I concur only in the result.

¶ 22 While *Anderson* clearly holds that an unsigned judgment may not "serve as the *basis*" for establishing the degree of a theft offense, *see State v. Anderson*, 797 P.2d 1114, 1117 (Utah Ct.App.1990) (emphasis added), I disagree with the majority that a prior conviction can never be established without a signed judgment, *cf., e.g., Abdullah v. State*, 847 N.E.2d 1031, 1034 (Ind.Ct.App.2006) ("[T]here are numerous other means [besides a signed judgment] by which the State may elect to prove a prior conviction ... including but certainly not limited to copies of sentencing orders, case chronologies, plea agreements, testimony from prosecutors or others involved in or witness to the prior conviction, or transcripts from the convicting court's proceedings."); *State v. Chaney*, 128 Ohio

App.3d 100, 713 N.E.2d 1118, 1121–22 (1998) (observing that a signed judgment is "one way, but not the exclusive way, of proving prior convictions"). Furthermore, I agree with the State that *Anderson* is distinguishable from this case. The unsigned Disposition Report in *Anderson* proved only that documents had been prepared based on an anticipated guilty plea and sentence. Because the Disposition Report was never signed, it provided no more evidence of a conviction than the unsigned judgment in this case did. However, the record provided to the trial court in this case, which included documents related to Stewart's "continued participation[ ] ... with Adult Probation and Parole" (AP & P) and his "failure to comply with probation on the sentencing for the theft," prove that Stewart was indeed convicted and sentenced for the earlier offense. I would therefore affirm on the ground that the case file provided to the trial court sufficiently evidenced the 2003 conviction.

¶ 23 However, even if I were to accept the majority's holding that *Anderson* requires a signed judgment to prove a prior conviction, I am troubled by its conclusion that this shortcoming in the State's evidence could be remedied after a guilty verdict was rendered. "[T]he burden of proving all elements of a crime is on the prosecution." *State v. Swenson*, 838 P.2d 1136, 1138 (Utah 1992). This means that the State must prove not only the elements of theft, but also the elements pertaining to the degree of the offense. *See State v. Davis*, 689 P.2d 5, 10 n. 12 (Utah 1984) (noting that the requirements of Utah Code section 76-6-412 must be satisfied in order for a theft conviction to be punishable as a felony); *cf. State v. Lyman*, 966 P.2d 278, 284–85 (Utah Ct.App.1998) (reducing defendant's felony conviction to a class B misdemeanor where the State failed to present sufficient evidence of the value of the stolen property). *See generally* Utah Code Ann. § 76-6-602 (2008) (listing the elements of retail theft); *id.* § 76-6-412 (listing the elements for determining the degree of a theft offense). In this case, the State alleged that

---

5. The "other evidence" permitted under rule 1005 must itself be independently admissible, of course. Whether there was a sufficient factual and legal basis for admission of the case file in

the prior case as such "other evidence" (for example, by taking judicial notice or through evidence rules applicable to public records) is beyond the scope of this analysis.

Stewart was guilty of third degree felony theft because he had been convicted of theft on two previous occasions. *See generally* Utah Code Ann. § 76–6–412(1)(b)(ii). Thus, it was the State's burden to present sufficient evidence at trial for the trier of fact to determine, beyond a reasonable doubt, that the 2003 conviction had taken place. If the majority's interpretation of *Anderson* is correct, then the State failed to meet its burden at trial.

¶ 24 The trial court did not defer its ruling or grant the State a continuance to obtain a signed judgment. Rather, on the strength of the evidence presented at trial, the court found "that the essential elements of the crime[ ] charged [had] been established" and that there was "ample evidence to establish the prior convictions" without the signed judgment.[1] Accordingly, the trial court found Stewart "guilty of the ... crime of theft *as charged in count one*," (emphasis added), that is, as "retail theft with prior convictions, a third degree felony." The trial court then immediately referred Stewart to AP & P for a presentence report, which was conducted under the assumption that Stewart had been convicted of a third degree felony. Essentially, if the majority is correct that the evidence was insufficient until a signed judgment was provided to the court post-trial, then Stewart was convicted on insufficient evidence. Any subsequent conviction based on the signed judgment provided post-trial should be prohibited as double jeopardy. *See generally State v. Cahoon,* 2009 UT 9, ¶ 16, 203 P.3d 957 ("Utah's statutory double jeopardy protection ... [protects defendants] from subsequent prosecutions for the same criminal act ... if the prosecution 'resulted in a finding of not guilty by the trier of facts or in a determination that there was insufficient evidence to warrant conviction.'" (emphasis omitted) (quoting Utah Code Ann. § 76–1–403(2) (2008))).

¶ 25 While having the 2003 judgment signed nunc pro tunc may have retroactively validated the original 2003 conviction, it should not be permitted to retroactively vali-

date the unsigned judgment as evidence of a prior conviction. Although *Anderson* suggests that "the lack of a signed judgment could perhaps have been corrected ... by entry nunc pro tunc," it does not suggest that such a correction may be made after trial, conviction, and referral to AP & P. *See* 797 P.2d at 1117 n. 13 (citations omitted). The proper approach in this case would have been for the State to obtain a nunc pro tunc signature on the judgment in time to use it as evidence *at trial.* Once the trial court entered a judgment in this case, however, insufficient evidence could not be remedied by a post-trial submission of evidence. To permit such a remedy sets a dangerous precedent, permitting the State to achieve a conviction despite failing to meet its burden of proof at trial.

---

1. Indeed, the trial court reaffirmed at sentencing that it believed the evidence the State had presented at trial was sufficient to prove the 2003

conviction, even without the signed judgment subsequently submitted by the State.